John R. McGuire, Appellant, *vs.* Adam O. Gilbert *et al.* Appellees.

*Opinion filed October 27, 1915—Rehearing denied Dec. 10, 1915.*

1. Lis pendens—*rule of lis pendens as applied to cross-actions.* The rule of *lis pendens* does not apply to one who at the time of his purchase of land from the complainant has no notice, from the pleadings then on file, of the claim of a defendant who subsequently files a cross-bill alleging equitable ownership of the land.

2. Notice—*when a purchaser is not chargeable with notice of equitable claim.* One purchasing land from an heir of the holder of the legal title is not chargeable with notice that the husband of such holder claims to be the equitable owner, where the husband, at the death of the wife, waived his right to administer upon her estate and did not claim any interest in the land except as surviving husband, and where it is not shown that the husband leased the land or collected rents, although it was occupied by tenants at the time of and for many years prior to the purchase from the heir.

3. Equity—*when subsequent purchaser must prove payment of consideration.* In equity a subsequent purchaser, in order to establish the fact that he is a *bona fide* purchaser for value, has the burden of proving that there was a valuable consideration and that it has been paid. (*Brown* v. *Welch,* 18 Ill. 343, followed.)

4. Same—*what does not prove grantee bona fide purchaser for value.* Mere proof of a deed reciting a certain consideration is not sufficient, in equity, to prove that the grantee was a *bona fide* purchaser for value. (*Lowden* v. *Wilson,* 233 Ill. 340, distinguished.)

Appeal from the Superior Court of Cook county; the Hon. Denis E. Sullivan, Judge, presiding.

Q. J. Chott, for appellant.

G. Fred Rush, and Walter S. Holden, for appellees.

Mr. Justice Cooke delivered the opinion of the court:

On June 23, 1913, Oliver O. Gilbert filed in the superior court of Cook county his bill for partition, alleging that on May 20, 1913, Amelia Gilbert, his mother, died intestate, seized in fee of certain real estate in the city of Chicago,

and leaving her surviving Adam O. Gilbert, her husband, and Charles A. Gilbert and the complainant, her sons, as her only heirs-at-law; that subject to a trust deed given by Amelia Gilbert and Adam O. Gilbert to the Northern Trust Company to secure a note for $2600, Adam O. Gilbert is entitled to dower and Charles A. Gilbert and the complainant are each entitled to an undivided one-half of said real estate in fee. Adam O. Gilbert, Charles A. Gilbert, the Northern Trust Company, Henry G. Brennecke, as administrator of the estate of Amelia Gilbert, and the tenants in possession of the premises, were made defendants, and partition was prayed for in accordance with the rights and interests of the parties as set forth in the bill.

On January 29, 1914, John R. McGuire was by order of court substituted as complainant, and he was granted leave to file a bill of complaint instanter. The bill filed by McGuire was identical with that filed by Oliver O. Gilbert, except it alleged that on November 23, 1913, McGuire purchased an undivided one-half of the premises from Oliver O. Gilbert and wife and received a deed therefor, which has been duly recorded and which McGuire was ready to produce in court upon the hearing of the cause.

On May 4, 1914, Adam O. Gilbert and Charles A. Gilbert filed a joint answer to the bill of John R. McGuire, and on the following day Adam O. Gilbert filed a cross-bill. By the cross-bill it was alleged that on or about July 11, 1888, Adam O. Gilbert purchased and took possession of the premises described in the bill for partition; that he paid for the same, his wife acting as his agent in making the payments; that certain improvements were thereafter placed on the land, all of which were paid for by the cross-complainant; that the real estate was conveyed to his wife by mistake of the scrivener or vendor, who assumed that because Amelia Gilbert had been making the payments on the purchase price she was therefore the purchaser, and that neither the cross-complainant nor his wife was aware of the mistake in the

270 — 11

name of the grantee until a short time before the death of Amelia Gilbert, and that before her death Amelia Gilbert often stated that she would convey the premises to her husband. The cross-bill further alleged that John R. McGuire had notice, through *lis pendens,* of the fact that in equity and in law the cross-complainant possessed the entire beneficial ownership of the premises and that Amelia Gilbert only held the naked legal title, and that McGuire is not a *bona fide* purchaser for value without notice. The prayer of the cross-bill was that the legal title, as well as the equitable title, be found and adjudged to be in Adam O. Gilbert subject to the trust deed, and that the deed from Oliver O. Gilbert to John R. McGuire be set aside as a cloud upon the title of the cross-complainant.

The answer of John R. McGuire specifically denied the material allegations of the cross-bill, including the allegation that he is not a *bona fide* purchaser for value without notice. The answer contained no affirmative allegation that McGuire had purchased the interest in the real estate claimed by him from Oliver O. Gilbert without notice of the facts upon which Adam O. Gilbert based his claim of ownership, nor was it alleged that he had paid anything for his deed from Oliver O. Gilbert.

The master to whom the cause was referred found, among other things, from the evidence adduced before him, that on July 11, 1888, Amelia Gilbert obtained title in fee simple to the premises described in the bill and cross-bill and that thereafter certain buildings were erected upon said real estate; that Adam O. Gilbert furnished all the purchase money for the property and paid for all the improvements placed thereon; that a mistake was made in drawing the deed of July 11, 1888, in that it named Amelia Gilbert as grantee therein when it should have contained the name of Adam O. Gilbert as grantee; that John R. McGuire is an innocent purchaser without notice and is the owner of an undivided one-half of said premises, subject to the dower

right of Adam O. Gilbert and subject to the trust deed to
the Northern Trust Company; that on February 25, 1914,
Charles A. Gilbert and his wife conveyed to Adam O. Gil-
bert all their interest in the premises by quit-claim deed, and
that Adam O. Gilbert is the owner of the remaining undi-
vided one-half of said premises subject to said trust deed.

Exceptions filed by Adam O. Gilbert to the master's re-
port were sustained by the court, and a decree was entered
dismissing the bill of John R. McGuire for want of equity
and setting aside the deed from Oliver O. Gilbert to Mc-
Guire as a cloud upon the title of Adam O. Gilbert. The
decree, among other things, found that the entire legal and
equitable title to the premises is in Adam O. Gilbert, subject
only to the trust deed above mentioned; that John R. Mc-
Guire is not a *bona fide* purchaser for value (1) because
there is no competent proof that he gave any actual valuable
consideration for the quit-claim deed from Oliver O. Gil-
bert; (2) because the possession of the premises by Adam
O. Gilbert at the time McGuire obtained his deed was notice
to him of the rights of Adam O. Gilbert in the premises;
and (3) because McGuire obtained his deed during the pend-
ency of this suit and is therefore within the rule of *lis pen-
dens*. From that decree John R. McGuire has prosecuted
this appeal.

We will consider these findings in the inverse order in
which they are stated in the decree.

The original bill was filed by Oliver O. Gilbert June 23,
1913. Charles A. Gilbert and Brennecke answered, and on
August 23, 1913, Adam O. Gilbert filed a general demurrer
to the bill. The pleadings stood thus when Oliver O. Gil-
bert, on November 23, 1913, sold his interest in the prem-
ises to appellant. The claim that Adam O. Gilbert was the
sole owner of the premises was first made in the pleadings
upon the filing of his answer and cross-bill in May, 1914.
The claim that appellant is within the rule of *lis pendens* is
therefore necessarily based upon the contention that at the

time of his purchase he was bound by the final determination of the suit without respect to the condition of the pleadings or the relief sought at the time of the purchase. The precise question involved has never been determined in this State, but decisions have been made which are so analogous as to render untenable the broad contention upon which the position of appellant is based. In *Bradley* v. *Luce,* 99 Ill. 234, it was held that the amendment of a bill by the introduction of new matter disconnected with the original bill did not relate back to the date of the filing of the bill and did not affect anyone as *lis pendens* until it was allowed and filed. In *Norris* v. *Ile,* 152 Ill. 190, it was held that where an amendment to a bill sets up a new equity or brings forth a new claim or a different or distinct ground of relief not before asserted, the *lis pendens* will begin only with the filing of such amendment. There is no difference, in principle, between the questions presented in those cases and the one here under consideration. In Pomeroy's Equity Jurisprudence (vol. 2, 3d ed. sec. 634,) the author says: *"Lis pendens* is notice of everything averred in the pleadings pertinent to the issue or to the relief sought and of the contents of exhibits filed and proved. * * * The notice arising from a pending suit does not affect property not embraced within the descriptions of the pleading, nor does its operation extend beyond the prayer for relief." Applying the rule as thus announced, appellant at the time of his purchase had no notice, from the pleadings, of the claim of Adam O. Gilbert that he owned the equitable title to the whole of this property, and the rule of *lis pendens,* therefore, did not apply to him.

*Bridger* v. *Exchange Bank,* 126 Ga. 821, is a well considered case in which this identical question was involved, and it was there held that as to the plaintiff's complaint, and pleas or answers to it defensive in character and seeking merely to prevent a recovery, the *lis pendens* arises in favor of the defendant, as against a purchaser from the plaintiff,

from the time of the commencement of the plaintiff's action, but as applied to a cross-action or cross-complaint by the defendant, setting up affirmative rights and praying affirmative relief against the plaintiff, the *lis pendens* begins from the filing of such cross-action or cross-complaint. This is a correct statement of the rule, and as applied to the facts in this case the appellant does not come within the rule of *lis pendens*.

Adam O. Gilbert and his wife had not resided on the premises in question for many years. The premises were in the possession of tenants, and it is argued that this possession was sufficient to give appellant notice, as upon inquiry he could have discovered that possession was held by the tenants of Adam O. Gilbert. After the death of Amelia Gilbert, Brennecke filed his petition for letters of administration on her estate, in which it was alleged that there was no personal estate and that the premises in question constituted the only property of which she died seized. Attached to this petition was a waiver of the right to act as administrator and a consent and request for the appointment of Brennecke, which was signed by Adam O. Gilbert and his son Charles. Brennecke thereupon, no doubt assuming that such was his duty, took charge of the real estate, and from that time until the appointment of a receiver after the filing of the cross-bill by Adam O. Gilbert, collected all the rents as administrator. The record does not disclose that Adam O. Gilbert leased the property or that he ever collected rents from any of the tenants. The facts proven tend to show that Adam O. Gilbert claimed no further interest in the property than such as he took by virtue of the statutes of Illinois as the surviving husband of Amelia Gilbert, in whom the record title stood. From all that appears in the record appellant was a purchaser without notice.

On the question whether appellant was a *bona fide* purchaser for value, counsel differ only as to the party upon whom rests the burden of proof. The rule in equity govern-

ing this question differs from that applied in actions at law. The leading case in this State involving the rule as applied to suits in equity is *Brown* v. *Welch*, 18 Ill. 343. In that case Cooley gave Welch a bond for deed on October 13, 1855, which was not filed for record until December 12, 1855. On October 26, 1855, Cooley conveyed the same premises to Brown and McCahan by warranty deed, which was filed for record October 29, 1855. Welch filed his bill in chancery against Brown and McCahan to require them to convey the premises to him and to have canceled and set aside their deed as fraudulent and void. It was there held that if one holding an equitable title neglects to have it recorded the presumption may be indulged that a subsequent purchaser did not have notice, but there is no presumption that the subsequent purchaser has paid the purchase money and he must prove that he has done so, and that the burden of proof was on defendants to show that they were *bona fide* purchasers for value, and having failed to show that they paid anything for the land the complainant was entitled to the relief prayed. This case has been consistently followed in this State, and was cited with approval in the late case of *Lyon* v. *Moore*, 259 Ill. 23, which held that where it is shown that one claims title under a grantee whose title is fraudulent, the burden is on him to show that he purchased in good faith and without notice of the fraud.

In *Moshier* v. *Knox College*, 32 Ill. 155, Knox College filed its bill in chancery to foreclose a mortgage for purchase money given to it by Patterson on January 1, 1856, which was recorded April 24, 1857. Moshier, one of the defendants to the bill, claimed title free of the mortgage lien by virtue of a deed from Patterson dated March 5, 1857, and recorded March 19, 1857. It was there held that it was incumbent upon Moshier to show not only that he had a deed, but that he actually paid for the land before he had notice of the prior equitable title, and that the lien of Knox Col-

lege was superior to the claim of Moshier because he had not shown that he had paid for the land.

In *Keys* v. *Test,* 33 Ill. 316, a bill was filed for the purpose of enforcing a conveyance of land and to restrain proceedings to recover possession thereof, and it was held that a subsequent purchaser setting up a claim to be a *bona fide* purchaser must allege and show a consideration actually paid.

In *Kiser* v. *Heuston,* 38 Ill. 252, Austin received his deed from Heuston after Heuston had given a mortgage to Kiser but before the mortgage had been recorded, and without any notice. Foreclosure proceedings were instituted against Heuston and Austin by Kiser. The chancellor decreed that Kiser take nothing by his mortgage and that the same be canceled as a cloud upon Austin's title. In passing upon the question involved we said: "Austin failed to make out his defense in not showing that he was a purchaser for a valuable consideration. If he was a mere volunteer, and paid or became liable for nothing as a consideration for the conveyance, then he has not suffered, nor can he suffer, any loss. If he paid a consideration for the purchase of the land he should have shown it and what sum was paid. * * * For the want of such proof the decree of the court below must be reversed."

In *Roseman* v. *Miller,* 84 Ill. 297, it was held that although one may purchase land without notice of the equities of others, yet if he takes the deed as a volunteer and has not paid the purchase money he is not an innocent purchaser for value and cannot be protected; that as against a third party claiming an equitable right he must prove that he paid the purchase money,—and this independently of the recitals in his deed.

In *Wait* v. *Smith,* 92 Ill. 385, a bill was filed to set aside certain deeds as fraudulent, and it was held that the rule is, the proof must show an actual payment of the considera-

tion; and this must be outside and independent of the recit-
als in the deed or instrument under which the party claims.

In *Grover* v. *Hale,* 107 Ill. 638, a bill was filed to set
aside a trustee's sale and a trustee's deed, and a bond for a
deed given to Mrs. Hale by the purchaser at the trustee's
sale, and it was there held that before Mrs. Hale could de-
fend against the bill to set aside the trustee's sale it was
incumbent upon her to show that she purchased the land
in good faith and for a valuable consideration, and that the
consideration was paid before notice of the defect in the title.

*Simmons Creek Coal Co.* v. *Doran,* 142 U. S. 417, was
an appeal from a decree of the district court of the United
States for the district of West Virginia setting aside and
annulling certain deeds as clouds upon the title of the com-
plainant, Doran, and denying the claim of the coal company
to the lands. *Brown* v. *Welch, supra,* was cited in that case
as authority for the holding that the recitals in the deeds in
the coal company's chain of title, which were attached to the
pleadings, no independent evidence having been adduced of
the payment by any of the defendants of any money what-
ever, could not be relied on, as against Doran, as proof of
the payment of the purchase money.

The basis for the holding in all these cases that the bur-
den of proof is upon a subsequent purchaser to show that
he has actually paid for the property, as stated in *Brown* v.
*Welch, supra,* is, that he must be presumed to be able to
prove the payment of the purchase price if he has made it,
and there is neither hardship nor injustice in requiring him
to make out his equitable claim,—at least so far as he may
be presumed to have the facilities for doing so. If he has
not paid the purchase money no wrong is done him by tak-
ing from him a legal title which has cost him nothing. If
he can show that he has paid the purchase money he has
then shown that he has in good conscience as much right to
the land as the complainant, and it would be as hard for
him to lose what he has paid as it would be for the com-

plainant. Under the rule announced in these cases, and to which we adhere, it was incumbent upon appellant to prove that he was a purchaser for value and that the consideration had actually been paid. The only proof offered on behalf of the appellant was the deed from Oliver O. Gilbert and wife, which recited a consideration of $1500. This was not sufficient, and the court properly found that appellant was not a *bona fide* purchaser for value.

Appellant, in his contention that this proof was sufficient, cites and relies upon *Lowden v. Wilson*, 233 Ill. 340. In that case we affirmed the decree of the superior court of Cook county setting aside a quit-claim deed to Wilson to an undivided one-third interest in certain premises in the city of Chicago as a cloud upon the title of Mrs. Lowden. The question there presented was whether Mrs. Lowden was a *bona fide* purchaser for value and without notice of the deed to Wilson, which was not recorded until after the purchase by Mrs. Lowden. It was there found that Mrs. Lowden purchased for a valuable consideration, which was fully paid, and without any notice of the rights of Wilson. One of the questions raised was as to the sufficiency of the bill, it being claimed that it was fatally defective because it failed to aver that the consideration for the conveyance to Mrs. Lowden was *bona fide* and truly paid. In passing upon that question we referred to *Brown v. Welch, supra,* which holds that while it is incumbent upon the holder of a subsequent deed to prove that he is a purchaser for value in any event, the insufficiency of the pleadings in failing to make such allegation or averment may be waived, and if the bill is not demurred to or the answer excepted to on that ground, advantage cannot thereafter be taken of such omission. In discussing this question we remarked: "It is not true, however, as plaintiff in error argues, that the purchase is presumed not to be *bona fide* until proof is made to the contrary. The burden of proof in such cases is upon the person alleging bad faith or want of consideration,"—citing *Ryder*

v. *Rush,* 102 Ill. 338, and *Anthony* v. *Wheeler,* 130 id. 128. This statement in the opinion was not necessary to a decision of the case, as it was affirmatively found from the proof that an adequate consideration had actually been paid and that Mrs. Lowden did not have notice of Wilson's deed. The cases of *Ryder* v. *Rush, supra,* and *Anthony* v. *Wheeler, supra,* were improperly cited and followed as stating the rule governing the burden of proof in suits in equity. Those cases were both actions in ejectment and laid down the strict rule which is applied only in actions at law, where the burden of proof is upon the party alleging bad faith or want of consideration.

The chancellor properly found that appellant was not a *bona fide* purchaser for value, and the decree of the superior court is affirmed.                    *Decree affirmed.*